1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JOHN DOE,                              Case No.  23-cv-02382-DMR

8                    Plaintiff,

9         v.                               **ORDER ON PETITION FOR WRIT OF
                                           HABEAS CORPUS**
10   MOISES BECERRA, et al.,
                                           Re: Dkt. No. 1
11                  Defendants.

12        Petitioner John Doe[1] is a noncitizen from Mexico who is currently in Immigration and

13   Customs Enforcement ("ICE") custody pending the conclusion of his removal proceedings.

14   Respondents are Moises Becerra, Field Office Director of ICE's San Francisco Field Office;

15   Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); Tae D.

16   Johnson, Acting Director of ICE; and Merrick B. Garland, the United States Attorney General.

17        On May 16, 2023, Petitioner filed a petition for writ of habeas corpus pursuant to 28

18   U.S.C. § 2241 in which he asks the court to order his release from custody within 14 days unless

19   the government schedules a bond hearing at which it "must establish by clear and convincing

20   evidence that [he] presents a risk of flight or danger" in order to continue his detention.  [Docket

21   No. 1 (Petition) ¶ 2, Prayer.]  The parties filed a stipulated briefing schedule on the petition which

22   the court entered on May 22, 2023.  [Docket No. 12.]

23        This matter is fully briefed and is suitable for resolution without a hearing.  Civ. L.R. 7-

24   1(b).  For the following reasons, the habeas petition is granted.

25

26   _____

27   [1] Petitioner filed an unopposed administrative motion to proceed under a pseudonym in these
     proceedings, arguing that disclosure of confidential information related to his applications for
     relief from removal will put him at increased risk of harm if he is deported to Mexico, worsen his
28   mental health condition, and expose him to harm while he remains in detention.  [Docket No. 3.]
     The motion to proceed under the pseudonym John Doe is granted.

United States District Court
Northern District of California

## I.      BACKGROUND

Petitioner was born in Mexico in 1987.  While he was a child living in Mexico, his cousin Mauricio sexually abused him.  Petitioner left for the United States in 1995 and joined his father in Salinas, California.  Petition ¶¶ 19-20.  He became a lawful permanent resident in 2000.  *Id*. at ¶ 18.  Petitioner experienced additional sexual abuse during his childhood after he came to the United States.  *Id*. at ¶ 20.  In 2010, Petitioner was recovering from a work-related injury and began babysitting Mauricio's three-year-old daughter.  In June 2010, Petitioner was playing with his own son and Mauricio's daughter.  While playing, Petitioner "pulled [the daughter's] underpants roughly for several seconds" and injured her.  *Id*. at ¶¶ 22, 23.  Later that evening, the mother of the victim noticed bleeding in the victim's vagina and took her to the hospital.  Petitioner was eventually arrested and charged with multiple felony counts of sexual assault.  He pled guilty to two counts of violating California Penal Code section 288(a) (lewd or lascivious acts upon a child) and one count of violating California Penal Code section 273a(a) (great bodily harm to child) and was sentenced to over 11 years in prison.  *Id*. at ¶ 24, 25; Ex. E.  He was released on parole in March 2020 after serving ten years of his sentence.  Petition ¶ 27.  After his release, Petitioner "engaged in intensive rehabilitation, and was regularly tested for drugs, subjected to monitoring, and required to attend weekly classes."  *Id*. at ¶ 28.

Petitioner contends that Mauricio and his family have repeatedly threatened to kill Petitioner since the assault on Mauricio's daughter.  *Id*. at ¶ 31.  He further contends that "Mauricio's family has the means to carry out their threats" because Mauricio's father has ties to organized crime in Mexico.  *Id*. at ¶ 32.

On June 1, 2021, DHS charged Petitioner as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony (violation of California Penal Code section 288(a)) and issued a Notice to Appear.  *Id*. at ¶ 35, Ex. D (Notice to Appear, "NTA").  DHS detained Petitioner the same day and transferred him to Golden State Annex.  Petition ¶ 34.  According to DHS Deportation Officer Daniel Martinez, ICE conducted a custody determination when Petitioner was taken into custody in light of the requirements imposed in *Fraihat v. U.S. Immigration & Customs Enforcement*, 445 F. Supp. 3d 709, 751 (C.D. Cal. 2020),

United States District Court
Northern District of California

*rev'd and remanded,* 16 F.4th 613 (9th Cir. 2021), regarding custody determinations for immigration detainees with risk factors for COVID-19.  [Docket No. 13-2 (Martinez Decl. June 6, 2023) ¶ 8.]  Martinez states that ICE determined that Petitioner would remain in custody "due to public safety."  *Id.*  According to Martinez, ICE again reviewed Petitioner's custody status on June 9, 2021 and determined that he would remain in custody "[d]ue to public safety."  *Id.* at ¶ 10.

On April 14, 2023, Petitioner filed a request for release with ICE and supported his request with a letter of support from the Assistant Facility Administrator at Golden State Annex describing his "exemplary behavior."  Petition ¶ 44, Exs. R, S.  ICE denied the request on May 24, 2023.  Martinez Decl. ¶ 17.

At the time Respondent filed the instant petition, he had been detained for over 23 months.

A.      **Removal Proceedings**

On September 2, 2023, an immigration judge ("IJ") found Petitioner statutorily ineligible for a custody redetermination based on his criminal conviction pursuant to 8 U.S.C. § 1226(c).  Martinez Decl. ¶ 11, Ex. 2.  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which denied the appeal on January 31, 2022.  Petition ¶ 35, Ex. C (Ugarte Decl. May 15, 2023) ¶ 10; Martinez Decl. ¶ 12, Ex. 3.

Petitioner filed an application for deferral of removal under the Convention Against Torture ("CAT") and sought re-adjustment of status with a waiver of inadmissibility.  Petition ¶ 36, Ugarte Decl. ¶¶ 16, 17.  Following evidentiary hearings in June and July 2022, an IJ denied his applications for relief on September 7, 2022 and ordered him removed to Mexico.  Petition ¶ 37, 38, Ex. M.  Petitioner appealed the decision to the BIA, which affirmed the IJ decision and dismissed the appeal on February 14, 2023.  Petition ¶ 41, Ex. O.  Petitioner filed a petition for review of the BIA's decision with the Ninth Circuit Court of Appeals and moved the court to stay his removal.  Petition ¶ 42, Exs. P, Q.  The Ninth Circuit issued a temporary stay of removal on February 23, 2023.  Petition Ex. Q.  The briefing on the appeal is due to be completed in mid-September.  Ugarte Decl. ¶ 31.

B.      **Details of Petitioner's Confinement**

As noted, Petitioner is confined at Golden State Annex ("Golden State"), which is in

McFarland, California.  [Docket No. 13-1 (Gonzalez Decl. June 7, 2023) ¶ 4.]  Golden State is managed by The GEO Group, Inc. ("GEO"), an independent contractor.  The warden, known as the "Facility Administrator," is a GEO employee based in McFarland.  *Id.*  McFarland is in Kern County, which is in the Eastern District of California.  [*See* Docket No. 13 (Return to Petition, "Return") 3.]

DHS Acting Assistant Field Office Director Nancy Gonzalez is based in Bakersfield, California.  She is assigned to the Bakersfield Sub-Office within ICE's Enforcement and Removal Operations, San Francisco Field Office.  The Bakersfield Sub-Office is responsible for oversight of noncitizens detained at Golden State.  Gonzalez Decl. ¶ 1.  Gonzalez states that she supports the Deputy Field Office Director and Field Office Director "in managing operations and procedures of enforcement and removal activity" throughout her area of responsibility, which includes "providing oversight and supervision of Supervisory Detention and Deportation Officers and their staff who maintain the docket management of ICE detainees at Golden State."  *Id.*  According to Gonzalez, she and her staff "directly liaise with the Golden State Facility Administrator and other GEO personnel regarding the detainees at Golden State."  *Id.* at ¶ 5.

Gonzalez's direct line supervisor, Deputy Field Office Director Orestes Cruz, is based in Bakersfield.  *Id.* at ¶ 6.  Cruz is responsible for ICE immigration enforcement operations within nine counties, including Kern County.  Cruz directly reports to Respondent Moises Becerra, Field Office Director ("FOD") of the "San Francisco Area of Responsibility," which encompasses offices in seven cities in California, as well as Hawaii, Guam, and the Northern Mariana Islands. *Id.* at ¶¶ 6-8.  Gonzalez states that Becerra is responsible for the management and direction of all enforcement and removal operations and law enforcement operations within the boundaries of the San Francisco Area of Responsibility.  *Id.* at ¶ 8.

## C.    The Habeas Petition

On May 16, 2023, Petitioner filed a petition for writ of habeas corpus in which he asks the court to order his release from custody within 14 days unless Respondents schedule a bond hearing before an IJ at which the government must "justify his continued detention by clear and convincing evidence."  Petition ¶ 2.  The petition asserts a single claim for relief: that his

prolonged detention without a hearing violates the Fifth Amendment's Due Process Clause.

## II.    JURISDICTION OVER THE PETITION

Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2241, which allows "the Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions."  28 U.S.C. § 2241(a).  A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Here, Petitioner asserts that his continued detention violates his due process rights under the Fifth Amendment of the United States Constitution and does not ask this court to defer removal.  *See* Petition ¶¶ 2, 4, 46-60; Petition 20-22.  The Ninth Circuit has held that "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]"  *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211-12 (9th Cir. 2011)).  Therefore, the court has subject matter jurisdiction pursuant to Section 2241.  *See, e.g., Hilario Pankim*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *4 (N.D. Cal. May 19, 2020) (concluding that court had subject matter jurisdiction over Section 2241 petition where noncitizen detainee argued his continued detention violated his constitutional rights).

Nonetheless, Respondents contend that the court lacks jurisdiction over the habeas petition because "jurisdiction lies in only one district: the district of confinement," which is the United States District Court for the Eastern District of California.  Return 1, 3-5.  Respondents make a related argument that the warden of GSA, whom they do not identify, or the Assistant Field Office Director (presumably, Acting Assistant Field Office Director Nancy Gonzalez) are proper respondents for Petitioner's habeas petition, not FOD Becerra.  *Id.* at 5 n.1.  As an alternative to dismissal, Respondents argue that the court should transfer the petition to the Eastern District.  *Id.* at 5.  Respondents primarily rely on *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), and *Lopez-Marroquin*, 955 F.3d at 759 in support of their jurisdiction and venue arguments.  *Id.* at 4-5.

This court rejected the government's nearly identical arguments in *Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022), *appeal dismissed on*

United States District Court
Northern District of California

*Aug. 21, 2023*, and concluded that the FOD of the San Francisco office with "ultimate control over [Golden State]" was the proper respondent in a Section 2241 petition filed by a noncitizen detained at Golden State, which is located in the Eastern District. *See id*. (collecting cases). Respondents offer no facts or argument that support a different outcome here. Accordingly, the court concludes that the Northern District is the proper forum for this petition.

## III.   MERITS OF THE PETITION

### A. Legal Framework for Entitlement to a Bond Hearing

The INA provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* In general, section 1226(a) governs detention during the pendency of a noncitizen's removal decision, and section 1231 governs detention following the issuance of a final removal order.

Section 1226(a) provides the Attorney General with discretionary authority to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Prieto-Romero*, 534 F.3d at 1057. A noncitizen detained pursuant to section 1226(a) can appeal ICE's initial custody determination to an immigration judge, who is authorized to "release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19(a) (granting immigration judges jurisdiction to review custody and bond determinations). By contrast, section 1226(c) mandates detention for noncitizens who have committed certain criminal offenses. 8 U.S.C. § 1226(c). A noncitizen subject to mandatory detention under section 1226(c) can only be released for witness protection purposes and if the noncitizen "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

The Supreme Court and the Ninth Circuit have long "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged

6

United States District Court
Northern District of California

1  detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v.*

2  *Hayes* ("*Rodriguez I*"), 591 F.3d 1105, 1114 (9th Cir. 2010). In 2015, the Ninth Circuit

3  considered the procedural protections available to noncitizens detained under 8 U.S.C. §§ 1225(b)

4  and 1226(c). *See Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *reversed*

5  *by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Rodriguez III*, a certified class of noncitizens

6  challenged their prolonged detentions pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and

7  1231(a) without the provision of individualized bond hearings.[2] 804 F.3d at 1065. Following the

8  entry of a preliminary injunction, which was affirmed on appeal, *see Rodriguez v. Robbins*

9  ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), the district court granted summary judgment to

10  the class and entered a permanent injunction requiring the government to provide a bond hearing

11  to any class member subject to detention longer than six months. 804 F.3d at 1065. The

12  government was ordered to provide each detainee with a bond hearing by his or her 195th day of

13  detention, with such hearings occurring automatically after notice. *Id.* at 1072. The district court

14  also required the government to prove by clear and convincing evidence that the detainee was a

15  flight risk or a danger to the community in order to justify the denial of bond. *Id*. at 1071. The

16  government appealed from the entry of the permanent injunction, and the class cross-appealed the

17  district court's denial of certain procedural requirements for bond hearings. *Id*. at 1072-73.

18  _____

19  [2] Section 1225(b) "applies to 'applicants for admission' who are stopped at the border or a port of entry, or who are 'present in the United States' but 'ha[ve] not been admitted.'" *Rodriguez III*, 804 F.3d at 1081 (quoting 8 U.S.C. § 1225(a)(1)). "The statute provides that asylum seekers 'shall

20  be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). As to all other such

21  applicants for admission, the statute provides for mandatory detention "if the examining immigration officer determines that [the individuals] seeking admission [are] not clearly and

22  beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

23          As discussed above, 8 U.S.C. § 1226(c) "requires that the Attorney General detain any

24  non-citizen who is inadmissible or deportable because of his criminal history upon that person's release from imprisonment, pending proceedings to remove him from the United

25  States." *Rodriguez III*, 804 F.3d at 1078, n.8. Detention under section 1226(c) is mandatory and individuals detained under that section may be released only if the government deems it

26  "necessary" for witness protection purposes. *Id.* at 1078 (citing 8 U.S.C. § 1226(c)(2)).

27          Section 1226(a) provides that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1231(a) governs

28  detention of noncitizens following issuance of a final removal order.

In relevant part, the Ninth Circuit court affirmed summary judgment and the entry of the permanent injunction as to the section 1226(c), 1225(b), and 1226(a) subclasses.  Relying on the canon of constitutional avoidance, the court construed sections 1225(b) and 1226(c) as imposing a six-month time limit on detention, after which the government may continue detention only under the authority of section 1226(a).  *Id.* at 1079, 1082.  The court re-affirmed its decision in *Casas* that a noncitizen "subjected to prolonged detention under § 1226(a) is entitled to a hearing to establish whether continued detention is necessary because he would pose a danger to the community or a flight risk upon release."  *Id.* at 1085 (citing *Casas*, 535 F.3d at 949-52).  The court thereby affirmed the district court's permanent injunction requiring the government to hold bond hearings every six months for noncitizens detained pursuant to sections 1226(c), 1225(b), and 1226(a).  *Id.* at 1090.  The court also affirmed the requirement that the government "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing."  *Id.* at 1087 (quoting *Rodriguez II*, 715 F.3d at 1135 (quoting *Singh*, 638 F.3d at 1203)).

The Supreme Court reversed *Rodriguez III* in *Jennings*.  The Court found that the Ninth Circuit had misapplied the canon of constitutional avoidance as to sections 1225(b), 1226(c), and 1226(a), and determined that "its interpretations of the three provisions at issue . . . are implausible."  138 S. Ct. at 842.  As to section 1225(b), which "applies primarily to aliens seeking entry into the United States," the Court noted that the statute divides applicants into two categories: section 1225(b)(1) provides that certain noncitizens claiming a credible fear of persecution "shall be detained for further consideration of the application for asylum," while section 1225(b)(2) provides that noncitizens who fall within the scope of that provision "shall be detained for a [removal] proceeding."  *Id.* (emphasis added) (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A)).  The Court found that "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded."  *Id.*  The Court rejected the argument that those provisions contain an implicit six-month limit on the length of detention, observing that "nothing in the statutory text imposes any limit on the length of detention" or "even hints that those provisions restrict detention after six months."  *Id.* at

842, 843.  As to the canon of constitutional avoidance, the Court held that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases . . . [i]nstead, the canon permits a court to 'choos[e] between competing plausible interpretations of a statutory text.'"  *Id.* at 843.  The Court concluded that sections 1225(b)(1) are 1225(b)(1) are not ambiguous, and that "neither provision can reasonably be read to limit detention to six months." *Id.* at 843-844 (contrasting section 1225(b), which provides that noncitizens "shall be detained" for further proceedings, with section 1231(a)(6), which provides that noncitizens "may be detained" after the completion of the removal period).

Similarly, the Court held that section 1226(c), which applies to noncitizens already present in the United States, could not plausibly be construed to include an implicit six-month time limit on the length of mandatory detention.  *Id.* at 846-47.  As to section 1226(a), the Court noted that "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  *Id.* at 847.  The Court held that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary."  *Id.*

*Jennings* only entertained statutory challenges to the INA's detention scheme and remanded the question of whether prolonged detention without an individualized bond hearing violates the due process clause of the Fifth Amendment.  Upon remand, the Ninth Circuit stated its "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional" and remanded the issue to the district court to consider it in the first instance.  *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018).

### B.    Discussion

The parties do not dispute that Petitioner is detained pursuant to the government's mandatory detention authority under section 1226(c).  It is also undisputed that Petitioner has been in custody for over two years without having been afforded a bond hearing.  Petitioner argues that his continued detention without such a hearing violates his Fifth Amendment due process rights. He contends that due process requires that he be given an individualized bond hearing under the

United States District Court
Northern District of California

1    balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Petition ¶¶ 51-60.  In the

2    alternative, Petitioner asks the court to find his detention without a bond hearing unconstitutional

3    because it has lasted for more than six months.  *See id.* at ¶¶ 61-63.

4        In response, Respondents argue that mandatory detention under 8 U.S.C. § 1226(c) is

5    constitutional as long as "it continues to 'serve its purported immigration purposes,'" including

6    "ensuring a noncitizen's appearance for removal proceedings and preventing the noncitizen from

7    committing further offenses."  Return 7 (citing *Demore v. Kim*, 538 U.S. 510, 527 (2003)).

8    Respondents contend that these purposes are served here.  *Id.* at 7-8.  They also argue that

9    "assuming, without conceding, that *Mathews* might apply, Petitioner's detention is not

10   unconstitutional under that test."  *Id.* at 13.  They also ask the court to reject a bright-line six

11   month rule.  *Id.* at 11.

12       *Demore* provides little support for Respondents' position.  In *Demore*, the Supreme Court

13   held that mandatory detention under section 1226(c) for the "brief period necessary" to complete

14   removal proceedings is "constitutionally permissible" under the Fifth Amendment.  538 U.S. at

15   513, 531.  The Supreme Court cautioned, however, that such detention has "a definite termination

16   point" and typically "lasts roughly a month and a half in the vast majority of cases in which it is

17   invoked, and about five months in the minority of cases in which the alien chooses to

18   appeal."  *Id.* at 529-30.  The Court accordingly concluded that the six-month detention at issue

19   constituted reasonable "temporary" confinement.  *Id.* at 530-31.  Here, Petitioner has been

20   detained for over two years—a considerably longer period of time than the detention at issue in

21   *Demore*.  *See, e.g., Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *4 (N.D.

22   Cal. Jan. 25, 2019) (noting that "[i]n contrast to the situation at the time *Demore* was decided, case

23   processing times today are considerably longer" and concluding that petitioner's detention for over

24   one year without a bond hearing violated his due process rights).

25       As this court has previously observed, since *Jennings*, "there remains 'a dearth of guidance

26   regarding the point at which an individual's continued mandatory detention under Section 1226(c)

27   becomes unconstitutional.'"  *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7

28   (N.D. Cal. Apr. 6, 2020) (quoting *Gonzalez*, 2019 WL 330906, at *3).  Absent controlling

1  authority establishing a bright-line rule for a due process right to receive periodic bond hearings,

2  the court finds that it is appropriate to conduct an individualized due process analysis under

3  *Mathews*, in which the Supreme Court held that "[t]he fundamental requirement of due process is

4  the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. at 333;

5  *see Salesh P*., 2022 WL 17082375, at *8 (collecting cases applying *Mathews* and applying its

6  test). *See also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (noting the

7  common use of the *Mathews* test and assuming without deciding that it applies to due process

8  claims in the immigration detention context; observing, "*Mathews* remains a flexible test that can

9  and must account for the heightened governmental interest in the immigration detention context.").

10      The three-part *Mathews* test requires courts to consider three factors: "*First*, the private

11  interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of

12  such interest through the procedures used, and the probable value, if any, of additional or

13  substitute procedural safeguards; and *finally*, the Government's interest, including the function

14  involved and the fiscal and administrative burdens that the additional or substitute procedural

15  requirement would entail." *Rodriguez Diaz*, 53 F.4th at 1207 (emphasis in original) (quoting

16  *Mathews*, 424 U.S. at 335).

17      The first factor is Petitioner's interest. Courts have held that there is a strong private

18  interest based on the duration of the detention. *See De Paz Sales v. Barr*, No. 19-cv-04148-KAW,

19  2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (finding a strong private interest where the

20  petitioner "risks continued detention absent a bond hearing"). "[L]iberty is the norm, and

21  detention prior to trial or without trial is the carefully limited exception." *Rodriguez IV*, 909 F.3d

22  at 256-57 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). Here, Petitioner has been

23  detained for over two years without a bond hearing, and there is no reasonably certain end to his

24  detention. This period of detention leans heavily toward finding a strong private interest at stake.

25  *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 776 (N.D. Cal. 2019) (finding a strong private

26  interest where the petitioner had been detained 22 months and received his last bond hearing 16

27  months prior); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30,

28  2020) (finding petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or

1    unreasonable imprisonment" where he had been detained for one year without a bond hearing);

2    *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023)

3    (finding "substantial" private interest where petitioner had been detained for 18 months without a

4    bond hearing; noting "[t]he government has not said why a delay of this magnitude is reasonable

5    under the circumstances, and did not proffer evidence that 'there is [a] reasonably certain end to

6    his custody in sight.'" (citation omitted)).

7           Respondents do not meaningfully dispute that Petitioner has a strong private interest.  They

8    assert that he "has made the decision to seek judicial review (and thus remain in custody in the

9    United States), which . . . diminishes his interest" and that his time in detention "is in large part

10   due to his own litigation choices in pursuing appeals to both the BIA and the Ninth Circuit."

11   Return 14.  Respondents' argument is not persuasive.  Petitioner's exercise of his appeal rights "do

12   not diminish his significant liberty interest in his release or his irreparable injury of continued

13   detention without a bond hearing."  *See Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO,

14   2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023); *Masood v. Barr*, No. 19-cv-07623-JD, 2020

15   WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("it ill suits the United States to suggest that [petitioner]

16   could shorten his detention by giving up [his appeal] rights and abandoning his asylum

17   application.").  Accordingly, the court finds that the first *Mathews* factor weighs in Petitioner's

18   favor.

19          The second factor looks at the value of additional safeguards given the risk of erroneous

20   deprivation of Petitioner's rights.  *See Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL

21   3619727, at *3 (N.D. Cal. July 30, 2018); *Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020

22   WL 7626414, at *9 (N.D. Cal. Dec. 22, 2020).  Here, ICE last reviewed Petitioner's detention on

23   June 9, 2021, over two years ago, *see* Martinez Decl. ¶ 10, but he has never received a bond

24   hearing to evaluate the necessity of his ongoing detention.  The denial of his April 2023 request

25   for release is "not a substitute for an individualized bond hearing."  *Rodriguez Picazo v. Garland*,

26   No. 23-CV-02529-AMO, 2023 WL 5352897, at *5 (N.D. Cal. Aug. 21, 2023) (citing *Rajnish*,

27   2020 WL 7626414, at *9).  In these circumstances, the value of additional procedural

28   safeguards—i.e., a bond hearing—is high given the risk of an erroneous deprivation of Petitioner's

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1  rights. *See Rajnish*, 2020 WL 7626414, at *9 (holding that "the value added by another hearing is

2  great" where petitioner had been held for nine months since an initial bond hearing that "was

3  unconstitutional and assigned the risk of error to him, not to the government" and there had been

4  "important developments" in the proceedings since then).

5          The final factor addresses the government's interest.  Respondents argue that detention

6  serves the government's interest in protecting the public from noncitizens who have been

7  convicted of crimes and preventing them from fleeing prior to or during their removal

8  proceedings.  Return 16-17.  However, "the governmental issue at stake in [these proceedings] is

9  the ability to detain Petitioner *without providing him with [a] bond hearing*, not whether the

10  government may continue to detain him" at all.  *Lopez Reyes*, 362 F. Supp. 3d at 777 (emphasis in

11  original).  Respondents do not explain how providing Petitioner with a bond hearing after more

12  than two years of detention would undermine its interest in enforcing immigration laws and

13  effecting removal.  *See Martinez Leiva v. Becerra*, No. 23-CV-02027-CRB, 2023 WL 3688097, at

14  *8 (N.D. Cal. May 26, 2023) ("Requiring the government to provide [Martinez Leiva] with a bond

15  hearing does not meaningfully undermine the government's interest in detaining non-citizens who

16  pose a danger to the community or are a flight risk." (quotation marks and citation omitted)).

17  "After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight

18  risk or danger to the community."  *Jimenez*, 2020 WL 510347, at *3 (observing that argument that

19  petitioner's "continued detention remains constitutional because it serves an immigration purpose:

20  to assure his presence at removal . . . loses sight of what is at stake.  [Petitioner] seeks a bond

21  hearing, not unqualified release.").  The court concludes that "[r]equiring the government to

22  provide [Petitioner] with a bond hearing does not meaningfully undermine the government's

23  interest in detaining non-citizens who pose a danger to the community or are a flight risk."  *Perera

24  v. Jennings*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021).

25  Therefore, this factor is neutral at best.

26          Having considered and weighed the *Mathews* factors, the court concludes that Petitioner's

27  continued detention without a bond hearing violates his due process rights under the Fifth

28  Amendment.  Due process requires Respondents to provide Petitioner with a bond hearing.  At the

13

1   hearing, the government must justify his continued detention by establishing by clear and

2   convincing evidence that he is a flight risk or a danger to the community pursuant to *Singh*, 638

3   F.3d at 1203. *See id.* at 1204 (observing that the "Supreme Court has repeatedly reaffirmed the

4   principle that 'due process places a heightened burden of proof on the State in civil proceedings in

5   which the 'individual interests at stake . . . are both particularly important and more substantial

6   than mere loss of money.'" (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)).

7   **IV.    CONCLUSION**

8            For the foregoing reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241

9   is granted.  Petitioner must be provided with a bond hearing before an immigration judge by 14

10  days from the date of this order.  At that hearing, DHS must establish by clear and convincing

11  evidence that Petitioner is a flight risk or a danger to the community in order to continue his

12  detention.

13

14          **IT IS SO ORDERED.**

15  Dated: September 1, 2023

16

17                                                                            _____

18                                                                            Donna M. Ryu
                                                                              Chief Magistrate Judge



19

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*

14